UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE:<br><br>FOTIS FRANK MARMARINOS<br>Debtor | )<br>)<br>)<br>)<br>) | In Proceedings Under Chapter 13<br>Case No. 10-13117-FJB |

## MOTION BY SECURED CREDITOR COMMUNITY CREDIT UNION OF LYNN FOR RELIEF FROM THE AUTOMATIC STAY

Now comes Community Credit Union of Lynn, ("Community"), a Secured Creditor of the Debtor Fotis Frank Marmarinos, ("Marmarinos" or "Debtor") and respectfully moves that this Honorable Court grant it Relief from the Automatic Stay in the aforementioned matter so that it might take possession of (including the institution of summary process proceedings in accordance with State Law), foreclose upon and thereafter sell at public auction in accordance with law property owned known and otherwise numbered as 35 Thoreau Circle, Beverly, Essex County, Massachusetts ("Mortgaged Premises").

As more particularly set forth hereafter, Community seeks Relief to foreclose its second mortgage perfected against the Mortgaged Premises.

This Motion is filed pursuant to 11 U.S.C.S. §362(d)(1)(2), Fed.R.Bankr.P. 4001, MLBR 9013 and 13-16-1.

In support of the within Motion, Community attaches hereto and incorporates by reference herein an Affidavit and in addition thereto states the following:

1. <u>Secured Status</u>: Community is a Secured Creditor of the Debtor, Fotis Frank Marmarinos.

2. <u>Amount Owed Creditor</u>: Exclusive of costs of this action and fees/expenses to foreclose its second mortgage, should the within Motion be allowed, the Debtor owes Community a total of $575,696.29 under both mortgages. The same is more particularly set forth and itemized on the attached Affidavit filed in support of the within Motion for Relief.

3. <u>Evidence of Secured Status</u>: The evidence of the secured debt due Community by the Debtor is as follows:

     a.   Note of March 3, 2005         (Exhibit "1")

     b.   Mortgage of March 3, 2005     (Exhibit "2")

     c.   Line of Credit of December 18, 2008   (Exhibit "3")

     d.   Mortgage of December 18, 2008   (Exhibit "4")

4. <u>Fair Market Value of Property</u>: According to an Appraisal dated April 27 2010, the same attached as Exhibit 1 to an Affidavit filed in

*Robert L. Marder*
*Attorney at Law*
*85 Exchange Street*
*Suite L 10*
*The Edison*
*Lynn, Massachusetts 01901*

*(781) 592-8154*
*Fax: (781) 599-1102*

support of the within Motion, the fair market value of the Mortgaged Premises is $750,000.00.

5.    <u>Liquidation Analysis</u>: Per an Affidavit filed in support of this Motion, Community avers that since the property would be sold under forced conditions including no right of inspection and the condition that the high bidder gain possession of the Premises, the liquidation value of Community's collateral would approximate 75% of fair market value or $562,500.00.

6.    <u>Other Liens Perfected of Record</u>: There are no liens perfected against the property other than the two mortgaged in favor of Community.

7.    <u>Filing of Petition:</u> This case was commenced on March 27, 2010.

8.    <u>No Confirmed Plan:</u> Through this date, the Debtor has not received Confirmation of any Chapter 13 Plan.

9.    <u>Monetary Default and No Post Petition Payments</u>: The Debtor has made no Post Petition Mortgage installments to Community due under the Note or Line since the Petition was filed on March 27. The total arrearage for both obligations is $10,102.46 and is more particularly itemized hereafter.

a. <u>Note:</u> The Debtor is delinquent for payments due April 1, May 1 and June 1. Each installment is in the amount of $2,490.42. The arrearage is therefore $7,471.32.

b. <u>Line:</u> Marmarinos is delinquent for installments owed for April 25 and May 25. The amount due for April was $1,306.38 while the May installment was $1,324.76, The total amount past due therefore is $2,631.14.

10.    <u>Default prior to Commencement of Case and Pre-Petition arrearage:</u> At the time this Ch. 13 was filed, the Debtor was past for the August 1, 2009 Note installment and was delinquent for the August 25, 2009 Line payment. The total arrearage for both instruments Pre-Petition is $30,833.64 calculated as follows:

a. <u>Note:</u> $20,674.42

b. <u>Line:</u> $10,159.22

The Pre-Petition Arrears are itemized on Proofs of Claim filed May 22 (Claim #2) and May 25 (Amended Proof as Claim #1).

11.    <u>No other Collateral to secure Debt:</u> Community has no other collateral to secure the amount due under the Line of Credit.

12.    <u>Length of Time to Complete Foreclosure Sale:</u> Community received Judgment Authorizing Foreclosure from Essex County Superior Court on March 5, 2010 and had scheduled a sale for March 29. If this Motion were Allowed, Community would have to re-advertise the sale pursuant to G.L. c. 244, and would also have the Auctioneer re-advertise commercially. The credit union estimates that process would take approximately 45 days.

13.    <u>Lack of Equity in the Mortgaged Premises from Liquidation Value:</u> The Debtor has no equity in the Mortgaged Premises from consideration of

*Robert L. Marder*
*Attorney at Law*
*85 Exchange Street*
*Suite L10*
*The Edison*
*Lynn, Massachusetts 01901*

*(781) 592-8154*
*Fax: (781) 589-1102*

liquidation value. The outstanding balances of both the First and Second Mortgages, effective this date and as itemized on the Affidavit filed in support this Motion, are $575,696.29. As referenced in ¶5 above as well in the Affidavit in support of this Motion, Community believes the Liquidation Value of the Mortgaged Premises is $562,500.00.

However, and as set forth above, Community expects to incur an additional $10,000.00 - $15,000.00 in fees and costs to complete its Foreclosure Sale if the within Motion is Allowed.

14.    Community Credit Union of Lynn, therefore, respectfully states that Relief from the Automatic Stay in the aforementioned matter is reasonable and is otherwise warranted based upon the following: (a) the Debtor has no equity in the Mortgaged Premises from consideration of Liquidation Value (b) the Debtor has made no Post Petition payments to the Secured Creditor since entry of this Petition and is three months in arrears of the Note and two months delinquent for obligations due under the Line of Credit (c) the Debtor has made no payments to the credit union on either the Note or the Line since August 2009 (d) there is no benefit to the Estate which will result from continuation of the Automatic Stay.

WHEREFORE, Community Credit Union of Lynn, respectfully moves that this Honorable Court

a.    grant it Relief from the Automatic Stay in the instant action to allow it to take possession of (including the institution of summary process proceedings in accordance with State Law), foreclose upon and to sell at public auction under its Second Mortgage in accordance with law the premises known and otherwise numbered as 35 Thoreau Circle, Beverly, Essex County, Massachusetts.

And for such other Relief as this Honorable Court deems fair and reasonable.

The Secured Creditor further represents it shall file an Accounting with this Honorable Court and the Chapter 13 Trustee of proceeds derived from a foreclosure sale upon completion of its auction.

Respectfully submitted,
COMMUNITY CREDIT UNION OF LYNN
By its attorney,

/s/ ROBERT L. MARDER
85 EXCHANGE STREET, BB0#319600
SUITE L10
LYNN, MA 01901
781-592-8154

*Robert L. Marder*
*Attorney at Law*
*85 Exchange Street*
*Suite L10*
*The Edison*
*Lynn, Massachusetts 01901*

*(781) 592-8154*
*Fax: (781) 599-1102*

CERTIFICATE OF SERVICE

I, Robert L. Marder, hereby certify under the pains and penalties of perjury that a copy of the within Motion for Relief from the Automatic Stay, Affidavit in support of the same, Certificate of Pre-Filing Conference and Ch. 13 Real Estate Worksheet were served upon the following parties by regular first class mail, postage pre-paid addressed to: Fotis Frank Marmarinos, 35 Thoreau Ciricle, Beverly, Ma. 01915, Debtor.

Copies of the above documents were also served electronically upon: James D. Lukowiak, Esq., Lukowiak and Associates, 1253 Worcester Road, Suite 202, Framingham, Ma. 01701, counsel for the Debtor; Carolyn M. Bankowski, Esq., P.O. Box 8250, Boston, Ma. 02114, Chapter 13 Trustee; Office of the United States Trustee, J.W. McCormack Post Office and Courthouse, 5 Post Office Square, 10th Floor, Boston, Ma. 02114; Ramesh Singh, c/0 Recovery Management System Corp., 25 SE 2nd Avenue, Suite 1120, Miami, FL 33131-1605.

/s/ ROBERT L. MARDER

DATED: 6/8/10

Robert L. Marder
Attorney at Law
85 Exchange Street
Suite L 10
The Edison
Lynn, Massachusetts 01901

(781) 592-8154
Fax: (781) 599-1102

-4-

## EXHIBIT 1

03/04/05   FRI 14:57 FAX 17815924949   COMMUNITY CREDIT UNION   →→→ CREDIT UNION   ☑002   ☑004

781-599-1102

# ADJUSTABLE RATE NOTE
(One-Year Treasury Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

March 3, 2005                    Lynn,                          Massachusetts
                                [City]                          [State]

35 Thoreau Circle, Beverly, Massachusetts 01915
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $400,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Community Credit Union of Lynn. I will make all payments under this note in the form of cash, checks or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.3750%. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the First day of each month beginning on May 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on April 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1 Andrew Street, Lynn, Massachusetts 01901, or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $2,239.89. This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The Interest rate I will pay may change on the First day of April, 2008, and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE NOTE-ARM 5-2-Single Family-Fannie Mae Uniform Instrument          Form 3502 1/01 (page 1 of 4)
©1986-2005 Standard Solutions, Inc. 781-324-0550                                              F1YN3502

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and Seven-Eighths** percentage points (2.8750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 7.7350% or less than 3.3750%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.3750%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other oan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments.

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.0000% of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
Witness

Fotis F. Marmarinos   a/k/a
Fotis S. Marmarinos

## EXHIBIT 2

(Redacted)

Community Credit Union of Lynn
1 Andrew Street
Lynn, MA 01901



File No: **05-95**

2005030700143 Bk:24025 Pg:504
03/07/2005 08:49:00 MTG Pg 1/19

**Property Address : 35 Thoreau Circle, Beverly, Massachusetts 01915**
_____ [Space Above This Line For Recording Data] _____

## MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20, and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **March 3, 2005**, together with all Riders to this document.

**(B) "Borrower"** is **Fotis F. Marmarinos** / Borrower is the mortgagor under this Security Instrument.
a/k/a Fotis S. Marmarinos

**(C) "Lender"** is **Community Credit Union of Lynn**. Lender is a corporation, organized and existing under the laws of **Commonwealth of Massachusetts**. Lender's address is **1 Andrew Street, Lynn, Massachusetts 01901**. Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated **March 3, 2005**. The Note states that Borrower owes Lender **Four Hundred Thousand and 00/100 Dollars** (U.S. **$400,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **April 1, 2035**.

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider

☐ Balloon Rider  ☐ Planned Unit Development Rider  ☒ Other(s) [specify]

EXHIBIT "A".

☐ 1-4 Family Rider  ☐ Biweekly Payment Rider

Mail to:
Demakis Law Offices, P.C.
56 Central Avenue, Suite 200
Lynn, MA 01901

(H) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "**Community Association Dues, Fees and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "**Escrow Items**" mean those items that are described in Section 3.

(L) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described

09/21/2009 10:39 FAX 7815935834   COMPASS BANK UNION   ☒004/017

property located in the   County [Type of Recording Jurisdiction] of Essex [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of 35   **Thoreau Circle, Beverly, Massachusetts 01915** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order;(c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits

specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices**. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction**. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy**. Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

09/21/2009 10:46 FAX 7815935534                                                      016/017

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of courtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witness

Fotis F. Marmarinos   a/k/a
Fotis S. Marmarinos

———————————— [Space Below This Line For Acknowledgment] ————————————

## Commonwealth of Massachusetts

Essex, ss:

On this **Third day of March, 2005**, before me, the undersigned notary public, personally appeared **Fotis F. Marmarinos**, proved to me through satisfactory evidence of identification, which were Driver's License to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

Joseph H. Devlin
Notary Public
My Commission Expires: **February 23, 2007**

Exhibit A

Property:  35 Thoreau Circle, Beverly, Massachusetts

The land with the buildings thereon, in Beverly, Essex County,
Massachusetts, shown as Lot 2 on a plan entitled ``Definitive
Subdivision Plan, Longfellow Place, Essex Street, Beverly,
Massachusetts, Developer:  The Winchester Group, Inc., 661 Main
Street, Winchester, Massachusetts, Engineer:  Beals and Thomas, Inc.,
2 Westborough Business Park, 200 Friberg Parkway, Westborough,
Massachusetts; Owners: Richard S. Humphrey, Jr., Linda S. Humphrey,
450 Essex Street, Beverly, Massachusetts and Alfred J. Rossi, 89
Bridge Street, Manchester, Massachusetts, dated December 20, 1985,
Revised April 10, 1986,'' recorded with the Essex South District
Registry of Deeds in Plan Book 210 as Plan 68, and which lot is more
particularly bounded and described as follows:

NORTHEASTERLY: By Thoreau Circle on two courses, measuring
               respectively thirty and 00/100 (30.00) feet and one
               hundred seventy and 91/100 (170.91) feet;
SOUTHEASTERLY: By Lot 1 as shown on said plan, one hundred five and
               85/100 (105.85) feet;
SOUTHWESTERLY: By land now or formerly of Robert H. Cottle, Jr., and
               Anne M. Cottle and land now or formerly of the City of
               Beverly on three courses, measuring respectively
               thirty-three and 74/100 (33.74) feet, fifty-nine and
               98/100 (59.98) and one hundred sixteen and 00/100 feet;
NORTHWESTERLY: By a twenty (20') foot right of way, as shown on said
               plan, one hundred thirty-three and 03/100 (133.03)
               feet.

Containing approximately 24,592 square feet, more or less, according
to said plan.

Subject to and with the benefit of all easements, restrictions,
reservations and other matters of record insofar as the same are now
in force and applicable.

Subject to a Declaration of ``Restrictive Covenants'' dated November
24, 1986, and recorded with the Essex South District Registry of Deeds
in Book 8642, Page 205.

Title to and rights of the public thereto to use the streets shown on
said plan for all purposes for which streets are used in the City of
Beverly.

Being the same premises conveyed to me by Deed of Anthony P. Petrucoi,
Trustee of Thoreau Realty Trust dated December 30, 1988, and recorded
with the Essex South District Registry of Deeds in Book 9844, Page
506.

EXHIBIT 3

# COMMUNITY CREDIT UNION

1 ANDREW STREET, LYNN, MA 01901

**Revolving Credit Agreement and Note**

Agreement and Note (herein called "Agreement") dated as of _____ **December 18, 2008** _____, between the above named Lender ("Lender")

having its principal place of business at **One Andrew Street, Lynn, MA 01901**

and _____ **Fotis F. Marmarinos and Ellen Marmarinos** _____ (the "Borrower(s)")

of **35 Thoreau Circle, Beverly, MA 01915** _____ Credit Limit: $ **165,000.00**

**Revolving Credit.** The Lender agrees, on the terms of this Agreement, to make loans to the Borrower in an aggregate principal amount at any one time outstanding not exceeding the Credit Limit shown above. The loans made to the Borrower pursuant to this Agreement shall constitute the Revolving Credit Account ("Account") of the Borrower. Within the Credit Limit, and subject to the terms hereof, the Borrower may borrow, repay and reborrow from the fourth business day after the date of this Agreement to the close of business on the 5th anniversary of the date hereof, or the termination of the Lender's obligation to loan in accordance with this Agreement, whichever is earlier. As used in this Section, close of business shall mean 3:00 p.m. E.S.T. or E.D.T., as the case may be.

**SECURITY.** To secure payment of the Account, the Borrower is giving the Lender a mortgage on real property located at _____

**35 Thoreau Circle, Beverly, MA 01915**

In the event that the fair market value of the mortgaged property declines significantly below the property's appraised value for the purposes of this plan, Lender may, without limiting any of its other remedies, immediately reduce the Credit Limit and/or refuse to honor any further borrowings under this Agreement. Borrower will be given notice of such action. Collateral securing other loans with Lender may also secure this loan.

Please refer to the mortgage for additional information. In addition, if any part or all of the Account is past due and the Borrower fails to pay the Lender as agreed, the Lender may, to the extent permitted by law without prior notice, take the outstanding balance out of any accounts that the Borrower has with the Lender.

**BORROWING:** Each loan will be in an amount of $300.00 or more, except when the amount remaining to be borrowed under the Credit Limit shall be less than such amount, in which event, the loan will be in an amount equal to said amount remaining to be borrowed.

**Method of Borrowing.** Borrowings hereunder shall be made (check applicable boxes below):
(a) ☒ by the Borrower executing the balance in Borrower's checking/NOW account no. **1200000998** _____ maintained with the Lender;
(b) ☐ by Borrower authorizing the Lender to transfer funds from the Account to said checking/NOW account no. _____; and/or
(c) ☐ by using any credit instrument that has been approved by the Lender.

**Note.** This Agreement shall constitute both a credit agreement and a promissory note. The Borrower hereby authorizes the Lender to record the amount of each loan evidenced by this document and each payment in repayment of the obligations evidenced by this document in such records of the Lender as it shall from time to time establish rather than to make physical notations thereof on this document.

**FINANCE CHARGE.** The Borrower shall pay to the Lender interest on the unpaid principal amount of the loans computed by applying a daily periodic rate of **0.0109589** % (**4.00** % **ANNUAL PERCENTAGE RATE**), subject to adjustment as hereinafter set forth, to the Average Daily Balance of the principal amount of loans hereunder. The Average Daily Balance is calculated as follows. First the daily balance is computed by taking the beginning principal balance of said loans each day, adding any new loans and subtracting any principal payments or credits. All Daily Balances for a billing cycle are added together and the sum is then divided by the total number of days in the billing cycle, and the result is the "Average Daily Balance". The product of the Average Daily Balance and the Daily Periodic Rate is then multiplied by the number of days in the billing cycle to determine the Finance Charge for the billing cycle. Loans are subject to interest from the date that the proceeds are advanced until the date that they are paid in full. There is no free period during which a loan may be repaid without incurring a finance charge. The Annual Percentage Rate includes only interest and not other costs.

☒ If checked, a minimum **FINANCE CHARGE of $0.50** will be charged for any month for which a finance charge is assessed.

**ADJUSTMENT OF ANNUAL PERCENTAGE RATE.** The Annual Percentage Rate will be adjusted by Lender at the beginning of each monthly billing cycle to be equal to a rate not exceeding the "Prime Rate" as most recently published in the Money Rates section of The Wall Street Journal (if more than one Prime Rate is published, the higher rate shall be used.) (The "index") plus _____ percentage points ("Margin"), rounded to the nearest one-quarter of one percent. If the index is no longer published, the holder of this Note may select a substitute index having similar characteristics, and the Borrower shall be notified of such substitution, in no event shall the annual percentage rate be so adjusted at any time be in excess of the maximum rate permitted under applicable law in effect at such time. An increase in the annual percentage rate will increase the amount of finance charge Borrower must pay the outstanding principal which will cause the minimum payment to increase. If allowed by law, the annual percentage rate will never be more than 18.0% per year at any time.

**DISCOUNTED ANNUAL PERCENTAGE RATE.** (☐Check, if applicable). The initial daily periodic rate of _____ % (_____% Annual Percentage Rate) is a discounted rate. The initial discounted rate shall remain in effect until the beginning of the 13th monthly billing cycle when under this Agreement (the amount of this discount is _____ percentage points). If the rates had not been discounted, the initial daily periodic rate would have been _____% and the Annual Percentage Rate would have been _____%.

Provisions of this paragraph apply if Borrower has signed the Automatic Payment Authorization below. Effective with the start of the 13th monthly billing cycle the rate of interest on this Note has been fixed at a lower rate in consideration of the Borrower's authorization to charge all payments coming due on this Note to the Borrower's deposit account number _____. In the event that the deposit account is closed or there is an insufficient balance in said account to pay a regularly scheduled payment due on this Note, the Lender may terminate such authorization and increase the interest rate payable on the outstanding balance of this Note by 0.25 percentage point(s) effective on the first day of the next monthly billing cycle after sending notice to the Borrower that such higher rate of interest will be charged. If the rates had been discounted, the daily periodic rate would have been _____% and the Annual Percentage Rate would have been _____%.

**PAYMENTS.** Prior to the 5th anniversary date hereof or to an earlier termination of the revolving credit, the Borrower shall pay to the Lender a minimum payment on or before the 25th day after the closing date of the billing cycle as provided in the invoice for such payment which Lender shall mail monthly to Borrower. The billing cycle is a period established monthly by the Lender in its written invoice to Borrower. The minimum payment is an amount equal to all accrued interest as of the closing date of the billing cycle plus 0.50% of the outstanding balance of principal on the closing date of the billing cycle, plus any amounts past due. The minimum payment is an amount equal to all accrued interest as of the closing date of the billing cycle plus 0.50% of the outstanding balance of principal on the closing date of the billing cycle, plus any amounts past due.

Following the 5th anniversary hereof, no further loan shall be made to Borrower hereunder and Borrower agrees to pay, monthly commencing on the 25th day of the month following such anniversary, all interest accrued through the last day of the prior month and 1/120th of the principal outstanding on said anniversary (but in no event shall the principal payment be less than $50.00 monthly).

In any event all sums due hereunder shall be paid in full no later than the 15th anniversary hereof. During the payment period following the 5th anniversary hereof, interest shall continue to be adjusted periodically as provided above unless a greater adjustment period is required by law.

**LATE CHARGES.** ☒Check, if applicable. In the event that any payment due hereunder is not paid in full within 15 days of its due date, Borrower must pay to Lender a late charge equal to the lesser of $10 or 10% of the outstanding unpaid balance of such payment.

**PROPERTY INSURANCE.** The Borrower agrees to maintain property insurance in amounts as may be required by the Lender and to name it as loss payee. The Borrower will maintain flood insurance if required by the Lender. The Borrower shall provide the Lender evidence of insurance. Borrower may obtain such insurance from any company which is reasonably acceptable to the Lender. **See the Rider attached hereto and made a part hereof.**

**ANNUAL FEE.** The annual fee shall be $ **n/a**

**CLOSING COSTS.** The Borrower may be required to pay the following closing costs:

| | | |
|---|---|---|
| Appraisal Fee .................... $ _____ | Title Insurance Policy .................... $ _____ |
| Recording Fee .................... $ _____ | _____ $ _____ |
| Title Examination Fee .................... $ _____ | _____ $ _____ |
| Preparation of Legal Documents .................... $ _____ | TOTAL AMOUNT DUE .................... $ _____ |

**Amending this Agreement.** To the extent permitted by law, the Lender may amend this Agreement by sending notice of the amendment to the Borrower in writing at least fifteen (15) days before the beginning of the statement period in which the amendment will take place. Any amendment will apply only to the outstanding balance in effect at the time the Agreement is amended.

By signing below, the Borrower(s) agree to all of the terms and certifies having received a completed copy of this Agreement and two (2) copies of a Notice of Right to Cancel the Agreement on the date shown below. Agreed to and executed as a sealed instrument **December 18, 2008**

Witness _____    **to both**    Signature _____

Witness _____    Signature _____, **by Fotis F. Marmarinos**

**YOU DO NOT HAVE TO SIGN THIS AGREEMENT IN ORDER TO OBTAIN REVOLVING CREDIT**

I, the undersigned, authorize the Lender to pay all or a portion of the debt incurred under my REVOLVING CREDIT NOTE AND AGREEMENT with the Lender by periodically deducting from my NOW/Checking or Share Draft Account the Minimum Payment required under my REVOLVING CREDIT NOTE AND AGREEMENT or such larger sums as the Lender and I may agree upon, when the same become due. This authorization shall not extend to any disputed item which I request the Lender not to pay.

Date _____    Signature _____    Account No. _____

Signature _____

White — Original — Yellow — Borrower Copy — Pink — File Copy     See reverse side for additional Terms and Conditions     ©1999 Bankers Group Purchasing, Waltham, MA 02453 (9/99)

\* her Attorney-in-Fact

RIDER

Borrower agrees to pay Lender a Recapture Fee of $725.00 in the event that Borrower cancels this Agreement and pays in full all amounts owed hereunder within two years of the execution of this Agreement. The Recapture Fee shall apply even if Borrower refinances this Revolving Equity Mortgage with Lender within said two year period.


_____          _____
Fotis F. Marmarinos                       Ellen Marmarinos, by
                                          Fotis F. Marmarinos, her Attorney-in-Fact




Date:  December 18, 2008

**EXHIBIT 4**

(Redacted)

2008122200272 Bk:28208 Pg:330
12/22/2008 12:57 MTG Pg 1/5

[Space above this line for recording data]

## REVOLVING CREDIT MORTGAGE

**THIS MORTGAGE** is made this 18th day of December, 2008 between the Mortgagor, **Fotis F. Marmarinos** of 35 Thoreau Circle, Beverly, Massachusetts 01915(herein "Borrower"), and the Mortgagee, **Community Credit Union of Lynn** having a business, mail or Post Office address of: **1 Andrew Street, Lynn, Massachusetts 01901** (herein "Lender").

**WHEREAS**, Borrower is or shall hereafter from time to time be indebted to Lender for money borrowed and accrued interest thereon under a revolving credit agreement (herein "Agreement") by and between Borrower and Lender dated **December 18, 2008**, in a principal amount which shall at no time exceed **One Hundred Sixty-Five Thousand and 00/100 Dollars ($165,000.00)** Dollars, which Agreement, among its other terms, (i) obligates Lender to advance sums from time to time to Borrower up to the stated maximum line of credit upon the written request of Borrower therefor without any discretion in Lender as long as the Agreement is still in effect at the time such request is delivered to Lender and Borrower is not in default under the Agreement or this Mortgage; (ii) requires a minimum monthly payment by Borrower; (iii) contemplates that from time to time during the term of this Agreement there may be no indebtedness of Borrower to Lender outstanding, but that Borrower has the right to thereafter incur further indebtedness to Lender under the Agreement by making a written request for an advance which advance shall be secured by this Mortgage with the same priority as if such advance had been made on the date of this Mortgage thereby continuing Lender's mortgage interest in the Property with priority over any and all encumbrances, whether voluntary or involuntary, which attached to the Property and were perfected subsequent to the date of the recording of this Mortgage with the appropriate Registry of Deeds, including without limitation, subsequently recorded mortgages, attachments and liens. This Mortgage, therefore, secures a sum to be lent by the Lender to the Borrower from time to time pursuant to an open-end-credit plan as defined in Section 1 of Chapter 140D of the Massachusetts General Laws.

**TO SECURE** to Lender (a) the repayment of the indebtedness evidenced by the Agreement, with interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage, and the performance of the covenants and agreements of Borrower herein contained, and (b) the repayment of any future advances, with interest thereon, made to Borrower by Lender (herein "Future Advances"), Borrower does hereby mortgage, grant and convey to Lender, WITH MORTGAGE COVENANTS, UPON STATUTORY CONDITION AND WITH THE STATUTORY POWER OF SALE, the following described property located in the County of: **Essex, Massachusetts:**

**See Exhibit A attached hereto and made a part hereof.**

which has the address of 35 Thoreau Circle, Beverly, Massachusetts 01915 (herein "Property Address");

**TOGETHER** with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are herein referred to as the "Property".

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, that except as provided in paragraph 22 hereof the Property is unencumbered, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any declarations, easements or restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

*(left margin, vertical)* **Property Address: 35 Thoreau Circle, Beverly, Massachusetts 01915**

Mail to:
Demakis Law Offices, P.C.
56 Central Avenue, Suite 201
Lynn, MA 01901

RevCrMtg

©1986-2008 Standard Solutions, Inc. 781-324-0550

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**18. Acceleration; Remedies.** In the event of a default as defined in the Agreement, including breach of the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 14 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and Lender shall have the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 18.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law, Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including reasonable attorney's fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

**19. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (I) the fifth day before sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Agreement, had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender and in enforcing the covenants and agreements of Borrower contained in this Mortgage and in enforcing Lender's remedies as provided in paragraph 18, hereof, including, but not limited to, reasonable attorney's fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**20. Assignment of Rents; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents, collected by Lender shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to reasonable attorney's fees, and then to the sums secured by this Mortgage. Lender shall be liable to account only for those rents actually received.

**21. Release.** Upon termination of the Agreement secured by this Mortgage, Lender shall discharge this Mortgage. Borrower shall pay all costs of recordation, if any.

**22. Prior Mortgage.** Lender acknowledges the following mortgage / lien is on record and will have priority over this Mortgage:

Borrower agrees that any default under such senior mortgage shall constitute a default of this Mortgage, whereupon Lender, at its discretion, may declare all sums secured by this Mortgage immediately due and payable. To the extent that the senior mortgagee is collecting any yearly taxes, assessments, ground rents, or insurance premiums which would otherwise be subject to paragraph 2 hereof, Lender shall not require the payment of such amounts to it as long as they are being collected by the senior mortgagee. Further, any insurance policy referred to in paragraph 2 or 5 hereof need only name the Lender as a loss payee as its interest may appear.

IN WITNESS, WHEREOF, Borrower has executed this Mortgage under seal.

_____          _____
Witness                                   Fotis F. Marmarinos

The undersigned, being the Mortgagor, and the Spouse of the Mortgagor (if any), hereby releases any homestead rights I/we may have in the Property.

Mortgagor: Fotis F. Marmarinos          Spouse of Mortgagor:

## Commonwealth of Massachusetts                          Essex, ss:

On this 13th day of December, 2008, before me, the undersigned notary public, personally appeared Fotis F. Marmarinos proved to me through satisfactory evidence of identification, which was a ☐ Driver's License; ☐ State ID; ☐ Passport; ☐ Other Government Issued ID; ☐ Other, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

_____
Joseph H. Devlin, Notary Public
My Commission Expires: February 7, 2014

©1986-2008 Standard Solutions, Inc. Tel: 781-320-0550                    RevCrMtg

# Exhibit A - Property Description

Closing date:      December 18, 2008

Borrower(s):      Fotis F. Marmarinos ~~and~~

Property
Address:      35 Thoreau Circle, Beverly, Massachusetts 01915

The land with the buildings thereon, in Beverly, Essex County, Massachusetts, shown as Lot 2 on a plan entitled "Definitive Subdivision Plan, Longfellow Place, Essex Street, Beverly, Massachusetts, Developer: The Winchester Group, Inc., 661 Main Street, Winchester, Massachusetts, Engineer: Beals and Thomas, Inc., 2 Westborough Business Park, 200 Friberg Parkway, Westborough, Massachusetts; Owners: Richard S. Humphrey, Jr., Linda S. Humphrey, 450 Essex Street, Beverly, Massachusetts and Alfred J. Rossi, 89 Bridge Street, Manchester, Massachusetts, dated December 20, 1985, Revised April 10, 1986," recorded with the Essex South District Registry of Deeds in Plan Book 210 as Plan 68, and which lot is more particularly bounded and described as follows:

| | |
|---|---|
| NORTHEASTERLY: | By Thoreau Circle on two courses, measuring respectively thirty and 00/100 (30.00) feet and one hundred seventy and 91/100 (170.91) feet; |
| SOUTHEASTERLY: | By Lot 1 as shown on said plan, one hundred five and 85/100 (105.85) feet; |
| SOUTHWESTERLY: | By land now or formerly of Robert H. Cottle, Jr., and Anne M. Cottle and land now or formerly of the City of Beverly on three courses, measuring respectively thirty-three and 74/100 (33.74) feet, fifty-nine and 98/100 (59.98) and one hundred sixteen and 00/100 feet; |
| NORTHWESTERLY: | By a twenty (20') foot right of way, as shown on said plan, one hundred thirty-three and 03/100 (133.03) feet. |

Containing approximately 24,592 square feet, more or less, according to said plan.

Subject to and with the benefit of all easements, restrictions, reservations and other matters of record insofar as the same are now in force and applicable.

Subject to a Declaration of "Restrictive Covenants" dated November 24, 1986, and recorded with the Essex South District Registry of Deeds in Book 8642, Page 205.

Title to and rights of the public thereto to use the streets shown on said plan for all purposes for which streets are used in the City of Beverly.

Being the same premises conveyed to me by Deed of Anthony P. Petrucoi, Trustee of Thoreau Realty Trust dated December 30, 1988, and recorded with the Essex South District Registry of Deeds in Book 9844, Page 506.

Subject to a first mortgage to Community Credit Union of Lynn in the original principal amount of $400,000.00 dated March 3, 2005, and recorded with the Essex South District Registry of Deeds in Book 24025, Page 504.

©1986-2008 Standard Solutions, Inc. 781-324-0550

**OFFICIAL LOCAL FORM 13**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS**

In re

Fotis Frank Marmarinos                                    Case No. 10-13117-FJB

Chapter   13

Debtor

**MOTION FOR RELIEF FROM STAY - REAL ESTATE WORKSHEET**
(To be attached to Motion for Relief from Stay)

I  Debra Noonan  Collection Specialist__ of  Community Credit Union of Lynn
(Name and Title)                                (Name of Organization/Corporation/Moving Party)

(hereinafter, "Movant") hereby declare (or certify, verify, or state):

**BACKGROUND INFORMATION**

1.     (a)     Date chapter 13 petition was filed (If case has been converted from Chapter 7 to
               Chapter 13, provide date of petition and date of conversion):

       (b)     Address of real property which is the subject of this motion:
               35 Thoreau Circle, Beverly, MA  01915

2.     (a)     Original Mortgagee's Name and Address:  Community Credit Union of Lynn, 1 Andrew St,
               Lynn, MA  01901

       b) Name and Address of Current Mortgage Holder:  Community Credit Union of Lynn

       c) Name of Note Holder, if different than Mortgage Holder: ____N/A

3.     Date of Mortgage: December  18, 2008

4.     Post-Petition payment address, if different than above: _N/A

222

5.  The manner in which the Movant perfected its interest in the property: _Mortgage recorded in the in the Essex County Registry of Deeds, in Book 28208, Page 380._

6.  Other collateral securing the note: __None__

7.  Other liens and encumbrances affecting the property in the order of their priority:

| Names of Senior Lien holder | Amount Due | Source of Information (e.g., Schedules filed by Debtor{s), public records) |
|---|---|---|
| Community Credit Union of Lynn | $386,091.66 | Movant's records |
| | | |
| | | |
| Movant's Lien | $189,604.63 | Movant's records |
| Names of Junior Lien holders | Amount Due | Source of Information |

8.  Existence and Date of Recorded Homestead (if known): ___ Recorded March 15, 2001

**DEBT/VALUE REPRESENTATIONS**

9.  Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of filing the motion: $189,604.63__ on mortgage for which Relief is sought_

    (Note: this amount may not be relied on as a "payoff" quotation.)

10. (a)  Movant's estimated fair market value of the real property: $750.0000_____

    (b)    Source of estimated fair market valuation:  _Peter Famalari, Appraiser_

    (c)    Liquidation value of the real property:    _$562,500_____

## STATUS OF DEBT AS OF THE PETITION DATE

11.    (a)    Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date:

            $__177,408.13 On mortgage for what Relief is sought_____

    (b)    Amount of principal: $ 172,901.76

    (c)    Amount of interest: $ _4,506.37_

    (d)    Amount of escrow (taxes and insurance): $ ___0_____

    (e)    Amount of forced placed insurance expended by Movant: $___0_____

    (f)    Amount of Attorney's fees billed to Debtor(s) pre-petition: $ 8,054.24_____

    (g)    Amount of pre-petition late fees, if any, billed to Debtor(s): $ _80.00_____

12.    Contractual interest rate: _3.25_____ (If interest rate is (or was) adjustable, please list the rate(s) and dates(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this.

13.    Explain any additional pre-petition fees, charges or amounts charged to the account of the Debtor(s)

and not listed above:_____

(If additional space is needed, list the amounts on a separate sheet and attach the sheet as an exhibit

to this form; list the exhibit number here: _____).

## AMOUNT OF ALLEGED POST-PETITION DEFAULT

### (AS OF MM/DD/YYYY)

14.   Date last payment was received: (mm/dd/yyyy).   08/01/2009 (1st mortgage)
                                                                     08/25/2009 ( second mortgage)

15.   Total number of post-petition payments due from the date of the filing of petition

       through the date of this Motion or (mm/dd/yyyy):   3 (4/1/2009, 5/1/2009 and 6/1/2009)
                                                                           2 (4/25/2009 and 5/25/2009)

### SCHEDULE OF POST-PETITION PAYMENTS IN DEFAULT

(Do not substitute computer generated internal accountings):

| Paym't Due Date | Amt. of Paym't Due | Amt. of Paym't Rec'd | Date Paym't Rec'd | Amt. Applied to Principal | Amt. Applied to Interest | Amt. Applied to Escrow | Late Fee Charged if any | Amt. Not Applied |
|---|---|---|---|---|---|---|---|---|
| 04/25/2010 | 1306.38 | 0 | | | | | | |
| 05/25/2010 | 1324.76 | 0 | | | | | | |
| 04/01/2010* | 2490.44 | 0 | | | | | | |
| 05/01/2010* | 2490.44 | 0 | | | | | | |
| 06/01/2010* | 2490.44 | 0 | | | | | | |
| | | | | | | | | |
| Totals | $10102.46 | $ 0 | | $ | $ | $ | | $ |

*first mortgage

16.   Amount of Movant's Attorneys' fees charged to Debtor to date for the
       preparation and filing of this Motion: $ 1,586.90 (including costs
       350.)

17.   Other Attorneys' fees charged to Debtor post-petition: $ 1,572.50

18.   Amount of Movant's post-petition inspection fees: $ _____

19.   Amount of Movant's post-petition appraisal/broker's price opinion: $350.00

20.   Amount of forced placed insurance or insurance provided by the Movant post-petition:

$____0_____

21.   Sum held in suspense by Movant in connection with this contract, if applicable:

$____0_____

22.   Amount of other post-petition advances or charges (e.g. real estate taxes, insurance):

$____0_____

23.   Total amount of postpetition default, including all payments, fees, and charges:

$2,631.14 plus $1586.90 (on mortgage for which relief is sought)_____

24.   Amount and date of post-petition payments offered by the Debtor(s) and refused by the
Movant: Amount(s) $_0_____;

Date(s): _____

### REQUIRED ATTACHMENTS TO MOTION

Attach the following documents to this motion and indicate the exhibit number associated with the documents:

(1)   Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibits _____ )

(2)   Copies of documents establishing proof of standing to bring this motion if different from the above. {Exhibits _____ }

(3)   Copies of documents establishing that Movant's interest in the real property is perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-I) filed with either the Clerk's Office or the Register of the county the property is located in. (Exhibits _____ )

**CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS**

The undersigned certifies that the information provided in this worksheet and any exhibits attached to this worksheet (other than transactional documents attached as required in paragraphs (1) through (3) above) are derived from records that (a) were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by a person with knowledge of those matters; and (b) were prepared and kept in the regular course of business.

In the event the Worksheet is not fully completed, Movant shall explain the reasons therefore and the reasonable efforts made to obtain the information. _____

_____

The undersigned further certifies that copies of any transactional documents attached to this worksheet as required by paragraphs 1, 2, or 3, immediately above, are true and accurate copies of the original documents. The undersigned further certifies that the original documents are in Movant's possession, except as follows:_____

I/WE DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING REPRESENTATIONS OF FACT ARE TRUE AND CORRECT TO THE BEST OF MY/OUR KNOWLEDGE AND BELIEF.

_Debra Noonan_

Signature

_____June 8, 2010

Date

Debra Noonan_____

Printed Name

Community Credit Union of Lynn, 1 Andrew St. Lynn, MA  01901

Title and Organization

227

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE:                                    )
                                          )
    FOTIS FRANK MARMARINOS                )        In Proceedings Under Chapter 13
                                          )        Case No. 10-13117-FJB
                        Debtor            )
                                          )

CERTIFICATE OF PRE-FILING CONFERENCE PURSUANT TO
MLBR 13-16-1(a)

I, Robert L. Marder, hereby state the following under the Pains and Penalties of Perjury as follows:

1. I am an attorney duly licensed and admitted to practice before this Honorable Court.

2. I am counsel for Community Credit Union of Lynn ("Community"), a secured creditor of the Debtor, Frank Fotis Marmarinos.

3. On May 25, 2010, I called counsel for the Debtor, James D. Lukowiak per the requirement of MLBR 13-16-1(a). We discussed the status of Post Petition payments due Community under both its first and second mortgages.

4. On May 26, 2010, I sent counsel for the Debtor a memo confirming our conversation and including therewith a summary of delinquent Post Petition payments due the credit union and advising him of the intent by Community to file a Motion for Relief from the Automatic Stay if the past due payments were not received within the time allowed by Rule.

WITNESS MY HAND AND SEAL THIS 8th DAY OF JUNE 2010

                                        /s/ ROBERT L. MARDER
                                        85 EXCHANGE STREET
                                        SUITE L-10
                                        LYNN, MA. 01901
                                        781-592-8154
                                        BBO# 319600

*Robert L. Marder*
*Attorney at Law*
*85 Exchange Street*
*Suite L-10*
*The Edison*
*Lynn, Massachusetts 01901*

*(781) 592-8154*
*Fax: (781) 599-1102*

-1-

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE:                                     )
                                           )
    FOTIS FRANK MARMARINOS                 )      In Proceedings Under Chapter 13
                   Debtor                  )      Case No. 10-13117-FJB
_____        )

ORDER

Upon Motion of Community Credit Union of Lynn for Relief from the Automatic Stay seeking to take possession of (including the institution of summary process proceedings in accordance with State Law), foreclose upon and to sell under its Second Mortgage at public auction in accordance with law the premises known and numbered as 35 Thoreau Circle, Beverly, Essex County, Massachusetts, Notice having been given of said Motion, the Court having taken such further action thereon as it has deemed to be necessary and proper and there appearing the aforesaid Debtor has no equity in the real estate described herein from consideration of Liquidation Value, has breached the Mortgage by reason of non-payment, has failed to pay the Secured Creditor any Post Petition Installments and there further appearing that there is no benefit to the Estate by continuation of the Automatic Stay, IT IS HEREBY:

ORDERED, ADJUDGED AND DECREED as follows:

a.    that Community Credit Union of Lynn is granted Relief from the Automatic Stay, pursuant to 11 U.S.C. §362(d)(1)(2), and is hereby authorized to: commence proceedings under applicable State Law to take possession of (including the institution of summary process proceedings in accordance with State Law), foreclose upon and to sell at public auction under its Second Mortgage in accordance with law the real estate known and numbered as 35 Thoreau Circle, Beverly, Essex County, Massachusetts.

It is further ORDERED that the secured party file an accounting with this Court and the Chapter 13 Trustee following its foreclosure sale.

AT BOSTON, MASSACHUSETTS THIS ____DAY OF _____ 2010.

_____
UNITED STATES BANKRUPTCY JUDGE

Robert L. Marder
Attorney at Law
85 Exchange Street
Suite L-10
The Edison
Lynn, Massachusetts 01901

(781) 599-8154
Fax: (781) 599-1102

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE:                                          )
                                                )
    FOTIS FRANK MARMARINOS                       )        In Proceedings Under Chapter 13
                                                )          Case No. 10-13117-FJB
                        Debtor                   )
                                                )

## DECLARATION RE: ELECTRONIC FILING

I, Debra Noonan, hereby declare under the penalty of perjury that all of the
information contained in my Affidavit (the "Document"), filed electronically,
is true and correct to the best of my knowledge and belief.   I understand
that this Declaration is to be filed with the Clerk of Court electronically
concurrently with the electronic filing of the Document.   I understand that
failure to file this Declaration may cause the Document to be struck and any
request contained or relying thereon to be denied, without further notice.

I further understand that pursuant to the Massachusetts Electronic Filing
Local Rule (MEFLR)-7(a) all paper documents containing the original
signatures executed under the penalties of perjury and filed electronically
with the Court are the property of the bankruptcy estate and shall be
maintained by the authorized CM/ECF Registered User for a period of five (5)
years after the closing of this case.

DATED:   6/8/10

                    Signed:   _Debra Noonan_
                              DEBRA NOONAN


## DECLARATION OF ATTORNEY

    I declare under penalty of perjury that I have reviewed the above
affiant's Affidavit and the information is complete and correct to the best
of my knowledge.   The affiant signed this form before I submitted the
Document, I gave the affiant a copy of the Document and this DECLARATION, and
I have followed all other electronic filing requirements currently
established by local rule and standing order.   This DECLARATION is based on
all information of which I have knowledge and the signature below constitutes
a certification under Fed. R. Bankr. P. 9011.   I have reviewed and will
comply with the provisions of MEFR 7.

DATED:  6/8/10

                    Signed:   _Robert L. Marder, Attorney for Affiant_

*Robert L. Marder*
*Attorney at Law*
*65 Exchange Street*
*Suite 210*
*The Plaza*
*Lynn, Massachusetts 01901*

*(781) 580-1154*
*Fax (781) 580-1102*

                                   -1-